UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HADDRICK BYRD, | : | **CIVIL NO. 1:09-CV-1551** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| ROBERT SHANNON, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

I. Background and Procedural History.


        The plaintiff, a state prisoner proceeding *pro se*,
commenced this 42 U.S.C. § 1983 action by filing a complaint on
August 13, 2009.  By an Order dated September 9, 2009, the
plaintiff's application to proceed *in forma pauperis* was granted.


        The plaintiff names as defendants: 1) Robert Shannon,
the Superintendent of the State Correctional Institution at
Frackville (SCI-Frackville); 2) V. Stanishefski, the Corrections
Health Care Administrator at SCI-Frackville; 3) Jack Robinson,
the Supervising Nurse at SCI-Frackville; 4) H. Spencer, a nurse
at SCI-Frackville; and 5) Dorina Varner, the Chief Grievance
Officer for the Pennsylvania Department of Corrections.

The plaintiff alleges that between January 4, 2008 and December 5, 2008 there were numerous delays and interruptions in the administration to him of the prescription eye drops Timolol and/or Travatan as treatment for his glaucoma.  He alleges that treatments were delayed over intermittent periods of time, with delays ranging from 3 to 35 days.  The plaintiff also alleges that the repeated delays and interruptions in his treatments caused him pain in the form of headaches and further damaged his eyesight.

In his complaint the plaintiff presents 42 U.S.C. § 1983 Eighth Amendment claims as well as state law negligence claims and is seeking injunctive relief as well as compensatory and punitive damages.

By an Order dated February 22, 2010, the defendants' motion to dismiss the complaint was denied in part and granted in part.  Only the plaintiff's 42 U.S.C. § 1983 claims against defendants Shannon and Varner were dismissed.  Accordingly, the remaining claims are the plaintiff's 42 U.S.C. § 1983 claims against defendants Stanishefski, Robinson, and Spencer, as well as the plaintiff's state law negligence claims against all of the defendants.

On March 12, 2010, the defendants filed an answer to the complaint.

On September 17, 2010, the defendants filed a motion for summary judgment, along with a brief and appendix in support and a LR 56.1 statement of facts not in dispute. The plaintiff filed a brief in opposition to the defendants' motion on September 29, 2010, along with a statement of disputed factual issues and his personal declaration.

II.  Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence

to support the nonmoving party's case." *Id.* at 325. Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of his pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at

249-50.  In determining whether a genuine issue of material fact
exists, the court must consider all evidence in the light most
favorable to the non-moving party.  *White v. Westinghouse*
*Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is
not to weigh the evidence and determine the truth of the matter,
but is to determine whether there is a genuine issue for trial.
*Anderson, supra,* 477 U.S. at 249.  The proper inquiry of the
court in connection with a motion for summary judgment "is the
threshold inquiry of determining whether there is the need for a
trial - whether, in other words, there are any genuine factual
issues that properly can be resolved only by a finder of fact
because they may reasonably be resolved in favor of either
party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry
of summary judgment, after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial." *Celotex, supra*, 477 U.S. at 322.  "Under such
circumstances, 'there can be no genuine issue as to any material
fact, since a complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III.  Discussion.

Defendant Spencer asserts that she is entitled to summary judgment because the plaintiff failed to exhaust administrative remedies as is required under the Prison Litigation Reform Act (PLRA).

"42 U.S.C. § 1997e(a), enacted as part of the PLRA, provides that a prisoner may not bring a § 1983 suit with respect to prison conditions 'until such administrative remedies as are available are exhausted.'" *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004).  42 U.S.C. § 1997e(a) requires proper exhaustion. *Woodford v. Ngo,* 548 U.S. 81 (2006).  In other words, § 1997e(a) requires more than simple exhaustion - i.e. more than that there is no further process available to the inmate within the grievance system. *Spruill*, *supra,* 372 F.3d at 227-31.  Section 1997e(a) requires that an inmate follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id.* at 231.  The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper.

*Id. See also Jones v. Bock,* 549 U.S. 199, 218 (2007)("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). "'[T]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued.'" *Williams v. Beard,* 482 F.3d 637, 640 (3d Cir. 2007)(quoting *Jones, supra,* 549 U.S. at 219).

"The first 'exhaustion' question is whether the plaintiff has exhausted his administrative remedies in the literal sense--whether further avenues of relief are available to him within the prison's inmate grievance process." *Spruill, supra,* 372 F.3d at 232. The second question is whether there was a procedural default in the exhaustion of administrative remedies. *Id.* A court reviewing a prisoner's § 1983 claim for compliance with § 1997e(a) must rely on the prison's grievance procedures in order to determine whether there as been a procedural default. *Id.*

The relevant procedure is DC-ADM 804. DC-ADM 804 requires the inmate to identify any persons who may have information that could be helpful in resolving the grievance. DC-

ADM 804, Part VI.A.7. *See also Spruill*, *supra,* 372 F.3d at 234

(holding that DC-ADM 804 made it mandatory for an inmate to

include in his grievance the facts relevant to his claim, that

the identity of a defendant is a fact relevant to an inmate's

claim, and that therefore it was mandatory for an inmate to

include the identity of the defendant in his grievance).[1]

Despite the failure of the inmate in *Spruill* to include a

particular defendant by name in the grievance, the court held

that the plaintiff had exhausted his remedies because the prison

grievance officer's recognition that the particular defendant was

"involved in the events that [the plaintiff] complained of

excused any procedural defects in [the plaintiff's] initial

grievances." *Id.*

---

1. *Spruill* analyzed a prior version of DC-ADM 804. The prior
version of DC-ADM 804 provided, in pertinent part: "The inmate
shall include a statement of the facts relevant to the claim. . .
.  The inmate should identify any persons who may have
information that could be helpful in resolving the grievance."
*Spruill*, *supra,* 372 F.3d at 234.  The current version of DC-ADM
804 and the version in effect in 2008 when the plaintiff filed
his grievance provides, in pertinent part:  "The inmate will
include a statement of the facts relevant to the claim. . . . The
inmate will identify any person(s) who may have information that
could be helpful in resolving the grievance."  DC-ADM 804, Part
VI.A.7.  To the extent that there is any material difference
between these versions, the current version more clearly requires
the inmate to identify any persons who may have information that
may be helpful in resolving the grievance.

The plaintiff argues that the United States Supreme Court has effectively overruled *Spruill*. However, the plaintiff is mistaken. The Court in *Jones v. Bock,* 549 U.S. 199, 218 (2007), reaffirmed the understanding that the PLRA requires compliance with prison grievance procedures. The Court stated that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The plaintiff here did not name defendant Spencer in his initial grievance and has provided no explanation as to why he failed to include her amongst the other individuals named, who are defendants in the instant case. The plaintiff here does not mention defendant Spencer at any stage during the appeals process. Unlike the unnamed defendant in *Spruill*, defendant Spencer was never recognized as being involved with the events surrounding the plaintiff's grievance by either the plaintiff or any of the grievance officials. Therefore, the plaintiff has procedurally defaulted his administrative remedies with respect to defendant Spencer. Accordingly, defendant Spencer is entitled to summary judgment on the plaintiff's Eighth Amendment claim.

The plaintiff claims that the persistent delays and interruptions in receiving his prescription eye drops have violated his rights under the Eighth Amendment. Defendants Stanishefski and Robinson contend that they are entitled to summary judgment as to the plaintiff's Eighth Amendment claims.[2]

Negligence of a medical practitioner in the course of providing medical care, when it results in injury, may constitute a state law tort (medical malpractice), but is not necessarily a violation of the Eighth Amendment just because the patient is a prisoner. *White v. Napoleon*, 897 F.2d 103, 108 (3d Cir. 1990). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). In order for the plaintiff to establish a viable Eighth Amendment medical claim he must establish that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429

2. Defendant Spencer also contends that she is entitled to summary judgment on the merits of the plaintiff's Eighth Amendment claim. However, given that we have determined that defendant Spencer is entitled to summary judgment on the plaintiff's Eighth Amendment claim on the basis of the plaintiff's failure to exhaust administrative remedies, we need not address the merits of the Eighth Amendment claim as to defendant Spencer.

U.S. 97 (1976).  Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medial care or intentionally interfering with the treatment once prescribed." *Id.* at 104-05.  Furthermore, an inadvertent failure to provide adequate medical care does not constitute a constitutional violation. *Id.* at 105-06.

There are two components comprising the concept of serious medical need, one relating to the consequences of a failure to treat and the other relating to the obviousness of those consequences. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).  The condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury or death. *Id*.  Also, the condition must be one that has been diagnosed by a doctor as requiring treatment or one that is so obvious that a lay person would easily recognize the need for a doctor's attention. *Id*.

The Third Circuit has "found 'deliberate indifference' in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical

treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Third Circuit has also "found 'deliberate indifference' to exist when the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)). Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa. 1996)(quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation."); *White*, *supra,* 897 F.2d at 110 (mere disagreement over proper

treatment does not state a claim upon which relief can be granted).

Along with their motion for summary judgment and brief in support, the defendants have presented a Local Rule (LR) 56.1 statement of material facts, excerpts from the deposition of the plaintiff, and the declarations of defendants Stanishefski, Robinson, and Spencer. The defendants have also presented records relating to the allegations in the plaintiff's complaint. From the documentation presented by the defendants a reasonable finder of fact could find that: the plaintiff was prescribed both Timolol and Travatan eye drops for his glaucoma; the plaintiff filed a grievance concerning failure to receive his eye drops; the plaintiff was without his eye drops for a period no longer than two months; the plaintiff saw an optometrist on several occasions during the period of time stated in the complaint and never requested eye drops; the delays were caused in part by the plaintiff's own failure to renew his prescriptions; the delays were also caused in part by the pharmacy that provided the medications; and that none of the defendants intentionally withheld the eye drops from the plaintiff.

In response to the defendants' motion for summary judgment, the plaintiff has provided a statement of disputed factual issues, argument opposing the defendants' motion for summary judgment, his own declaration, and documents and records relating to his treatment and the grievance he filed. The plaintiff's statement of disputed factual issues is merely a statement of the ultimate issues in the case. The plaintiff did not respond to the defendants' statement of material fact as required by LR 56.1. Therefore, all the material facts set forth in the defendants' statement are deemed admitted.

The material facts, summarized from the defendants' statement, are as follows: the plaintiff had problems receiving his prescription eye drops; the plaintiff contacted defendant Stanishefski several times concerning the eye drops; defendant Robinson responded to the plaintiff's inquiries on behalf of defendant Stanishefski; the plaintiff has interacted with defendant Spencer at the self-medication window, but never wrote to her about the eye drops; the plaintiff contends he was without his prescribed Travatan eye drops for a total of about 105 days between 2008 and 2009 and suffered from headaches as a result; the plaintiff contends he was without his prescribed Timolol eye drops for about 58 days; on November 3, 2008, the plaintiff filed a grievance concerning the lack of eye drops; the plaintiff's

prescriptions expired on July 31, 2008; and the prescriptions were not renewed until September 22, 2008. The defendants' statement of material facts also sets forth the dates in which the plaintiff was supplied with eye drops.

Although the plaintiff has failed to file the required LR 56.1 statement of facts, he has provided other documentation in opposition to the defendants' motion for summary judgment. From the documentation presented by the plaintiff a reasonable finder of fact could find that: the plaintiff was without his Travatan eye drops for a total of approximately 105 days between January 4, 2008 and December 5, 2008; the plaintiff was without his Timolol eye drops for a total of 58 days between January 4, 2008 and December 5, 2008; the plaintiff was unsure whether it was his responsibility to renew his prescription; after the plaintiff's prescription was renewed there were still delays and interruptions in receiving the eye drops; the plaintiff informed the optometrist that he had not received the needed eye drops; the plaintiff filed a grievance based upon not receiving his eye drops; the plaintiff made numerous inquiries and requests to the defendants concerning the eye drops; and the plaintiff suffered headaches because he did not receive the eye drops.

In determining whether a genuine issue of material fact exists, we must consider all of the evidence in the light most favorable to the plaintiff. This court may not judge the credibility of the declarants on a motion for summary judgment.

Other courts have granted defendants' summary judgment motions based on claims of deliberate indifference relating to a failure to provide eye drops for the treatment of glaucoma. *Wesley v. Murphy*, 2010 WL 2736943 (E.D.Pa. 2010)("The one-week delay in provision of one of three prescription eye-drops to plaintiff, and the substitution of a lower dosage solution for several more weeks, does not constitute deliberate indifference[.]"). It has also been found that sporadic delays, not exceeding four days, in providing prescription medication do not amount to deliberate indifference. *Ayala v. Terhune*, 195 Fed. Appx. 87, 91 (3d Cir. 2006).

In the instant case, the plaintiff has not presented evidence from which a reasonable trier of fact can find that defendant Stanishefski or defendant Robinson was deliberately indifferent to his serious medical needs. Although the evidence presented by the plaintiff demonstrates delays in receiving his prescription eye drops, he has not presented evidence that

defendants Stanishefski and Robinson were responsible for those delays or failed to take reasonable action after being made aware of those delays.

The longest delay occurred in August and September of 2008. The plaintiff was given a one month supply of his eye drops on July 24, 2008 but he was not given another supply of his eye drops until September 23, 2008. *Doc. 64* at ¶¶ 17 & 19. The reason for the delay was because the plaintiff's prescriptions had expired on July 31, 2008. *Id.* at ¶18. However, the plaintiff did not write to defendant Stanishefski about the matter until September 16, 2008. *Doc. 68-2* at 50. Defendant Robinson, responding on behalf of defendant Stanishefski, responded to the plaintiff that he would have the drops in a couple of days. *Id.* Dr. Sterling renewed the order for the eye drops on September 22, 2008 and the plaintiff was given the drops on September 23, 2008. *Doc. 64* at ¶¶ 18 & 19. Thus, the plaintiff received the drops shortly after informing defendant Stanishefski that they had not been provided.

The plaintiff also wrote to defendant Stanishefski about a number of other delays in receiving his eye drops. He wrote her on March 4, 2008 about not receiving his Timolol drops

on March 3, 2008. *Doc. 68-2* at 38.  Defendant Robinson responded

on behalf of defendant Stanishefski as follows: "We can not give

you the eye drops if the pharmacy does not send them to us.  Also

you were on the call out on 3/5/08 and did not show up for your

drops.  You are now on the call out for 3/9/08." *Id.*  The

plaintiff was given the Timolol drops on March 7, 2008. *Doc. 1* at

¶22.


        The plaintiff wrote to defendant Stanishefski on

October 29, 2008 about not being called out to pick up his drops

on October 23, 2008. *Doc. 68-2* at 52.  Defendant Robinson

responded on behalf of defendant Stanishefski as follows:

"Medical does not give you them.  We can only give them to you

when the pharmacy ships them to us.  I will check what the

problem is so to try and avoid this in the future." *Id.*  The

plaintiff was given a one month's supply of Timolol on November

5, 2008 and a one month's supply of Travatan on November 9, 2008.

*Doc. 64* at ¶ 19.


        The plaintiff filed a grievance on November 3, 2008

about not being scheduled to pick his eye drops on October 21,

2008 and about a pattern of delays in receiving his drops. *Doc.*

*68-2* at 56.  Defendant Robinson responded on behalf of defendant

Stanishefski as follows:

> This is a summary of my findings regarding
> your grievance #248753.
>
> Your concern is you did not receive your eye
> drops for glaucoma.  A review of your medical
> record reveals your eye drop medication
> prescription expired on July 31, 2007.  You
> participate in the self-medication program.
> The self-medication permits you to be
> responsible for your health care needs.  You
> never attempted to access sick call when you
> knew the eye drops had expired.  In addition
> you were also seen by the optometrist three
> times since July 2008 and never requested eye
> drops from him.
>
> You have an eye condition that will require
> eye drop medication for the rest of your
> life.  I strongly encourage you to be an
> active participant in your care.
>
> This grievance including monetary requests is
> denied.

*Doc 68-2* at 57.


The plaintiff wrote to defendant Stanishefski on

December 4, 2008 about not being given Timolol drops on December

2, 2008. *Doc. 68-2* at 70.  Defendant Robinson responded on behalf

of defendant Stanishefski indicating that the plaintiff received

the drops on December 5, 2008. *Id.*


A reasonable trier of fact could not conclude that

defendants Stanishefski and Robinson were deliberately

indifferent to the plaintiff's serious medical needs. Accordingly, defendants Stanishefski and Robinson are entitled to summary judgment on the plaintiff's 42 U.S.C. § 1983 Eighth Amendment claims.

The plaintiff argues in his brief in opposition to the defendants' motion for summary judgment that the court should revisit its dismissal of his 42 U.S.C. § 1983 Eighth Amendment claims against defendants Shannon and Varner because he did not receive timely notice of the Report and Recommendation recommending dismissal of the § 1983 claims against defendants Shannon and Varner and was therefore prevented from filing objections to the Report and Recommendation. A brief in opposition is not the proper procedure to request the court to reconsider a prior ruling. A motion for reconsideration is the proper procedure to request the court to reconsider a prior ruling. Pursuant to Local Rule 7.10, such a motion for reconsideration must be filed within 14 days afer the entry of the order concerned. The plaintiff did in fact file a motion for reconsideration of the court's order of February 22, 2010 adopting the Report and Recommendation regarding the Eighth Amendment claims against defendants Shannon and Varner. The only argument raised by the plaintiff in his motion for reconsideration is that the undersigned should have considered

his negligence claims.  The undersigned did not consider the plaintiff's negligence claims in the prior Report and Recommendation because the defendants did not move to dismiss the negligence claims.  By an Order dated March 17, 2010, Judge Rambo deemed the plaintiff's motion for reconsideration moot and explained that the plaintiff's negligence claims remain in this case.  There is no basis at this point in time for the court to reconsider the Order dismissing the Eighth Amendment claims against defendants Shannon and Varner.

The defendants have not moved for summary judgment on the merits of the plaintiff's state negligence claims.  Rather, the defendants request that if the plaintiff's federal law claims are dismissed, supplemental jurisdiction over the state law claims be denied. *See Doc. 63* at 11 n.1.  Because we are recommending that summary judgment be granted to the defendants as to the remaining federal claims, we also recommend that the court decline to exercise supplemental jurisdiction over and dismiss the state law negligence claims. 28 U.S.C. § 1367(c)(3)("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if - . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)(holding that when federal causes of action

are dismissed, federal courts should not separately entertain pendent state claims).

IV. Recommendations.

Based on the foregoing, it is recommended that the defendants' motion (doc. 62) for summary judgment be granted and that defendants Spencer, Stanishefski and Robinson be granted summary judgment as to the 42 U.S.C. § 1983 Eighth Amendment claims.  It is further recommended that the court decline to exercise supplemental jurisdiction over and dismiss the state law negligence claims.

<u>/s/ J. Andrew Smyser</u>
J. Andrew Smyser
Magistrate Judge


Dated: November 23, 2010.